David S. Casey, Jr., SBN 060768
*dcasey@cglaw.com*
Gayle M. Blatt, SBN 122048
*gmb@cglaw.com*
Jeremy Robinson, SBN 188325
*jrobinson@cglaw.com*
Angela Jae Chun, SBN 248571
*ajc@cglaw.com*
Alyssa Williams, SBN 310987
*awilliams@cglaw.com*
**CASEY GERRY SCHENK**
**FRANCAVILLA BLATT & PENFIELD, LLP**
110 Laurel Street
San Diego, CA 92101
Telephone: (619) 238-1811
Facsimile: (619) 544-9232

Attorneys for Plaintiff and the
proposed Class

## United States District Court

### Northern District of California

### San Jose Division

| | |
|---|---|
| | Case No. |
| **Louisa Ferrer**, on behalf of herself and all others similarly situated, | **Class Action Complaint for Damages and Equitable Relief** |
| Plaintiff, | 1. **Violations of the UCL (Cal. Bus. & Prof. Code § 17200 *et seq.*)** |
| v. | 2. **Violations of the Magnuson-Moss Warranty Act (15 U.S.C. § 2301 *et seq.*)** |
| **Intel Corporation**, | 3. **Breach of Express Contract** |
| Defendant. | 4. **Breach of Implied Contract** |
| | 5. **Violations of the Song-Beverly Warranty Act (Cal. Civ. Code § 1792 *et seq.*)** |
| | 6. **Violations of the CLRA (Cal. Civ. Code § 1750 *et seq.*)** |
| | 7. **Unjust Enrichment / Quasi Contract** |
| | **<u>Demand for Jury Trial</u>** |

Plaintiff Louisa Ferrer, individually and on behalf of all others similarly situated, by and through her undersigned counsel, brings this class action against Defendant Intel Corporation ("Intel"). Plaintiff alleges the following upon her own knowledge, or where there is no personal knowledge, upon the investigation of counsel and/or upon information and belief:

## INTRODUCTION

1.      Intel is a well-known tech company with a global reach. Intel invented the x86 series of microprocessors, which are used in most personal computers regardless of manufacturer. Intel dominates the computer processor market, making "about 90 percent of the world's computer processors and 99 percent of the server chips in the data centers that effectively run the internet."[1] Nearly anyone who owns any modern electronics—cell phone, laptop, tablet, smart car, etc.—has something with an Intel chip in it.

2.      This pervasiveness made the recent revelation that Intel chips suffer from not one, but two critical security flaws all the more alarming. Unfortunately, the patch released to protect against some—but not all—of these vulnerabilities can cause system performance to suffer significantly.

3.      Intel knew about both of these vulnerabilities, called Meltdown and Spectre, since at least June 2017 but chose not to alert consumers.[2] Because fixing the security problems would involve a major restructuring of its chip design and manufacturing process, Intel also continued to design, manufacture, and sell chips impacted by the vulnerabilities. Intel intended to keep quiet about the flaws for longer, but an early leak forced its hand.[3] Intel made its first public statement about the vulnerabilities on January 3, 2018, more than half a year after it first learned of at least one of the vulnerabilities, and more than a month after Intel CEO Brian Krzanich unloaded

---

[1] Max Chafkin & Ian King, "Intel Has a Big Problem. It Needs to Act Like It," Bloomberg (Jan. 18, 2018, 1:00a PST), https://www.bloomberg.com/news/features/2018-01-18/intel-has-a-big-problem-it-needs-to-act-like-it.
[2] Matt O'Brien, "Intel CEO Promises Fix for Serious Chip Security Flaw," TIME (Jan. 9, 2018), http://time.com/5094916/intel-security-flaw-fix/.
[3] Anita Balakrishnan, "Intel CEO: We believe we have the right fixes for security exploit," CNBC (last updated Jan. 3, 2018, 8:10p EST,) https://www.cnbc.com/2018/01/03/intel-ceo-brian-krzanich-on-security-flaw.html.

approximately $39 million in Intel stock and options.[4]

4.     Multiple teams of researchers discovered the Meltdown vulnerability nearly concurrently, each notifying Intel of their findings in 2017. That so many separate parties stumbled upon the same problem at the same time begs the question of who discovered it in the past—and kept quiet.

5.     Intel has built its reputation in the chip market on two factors: security and speed. Meltdown and Spectre challenge both. As a result, Plaintiff and Class members are left with devices that are either slower or substantially more vulnerable than they bargained for.

PARTIES

**A.     Plaintiff**

6.     Plaintiff Louisa Ferrer is a resident of Santa Cruz, California. She purchased a laptop with an 6th generation Intel i7 chip from Amazon on May 8, 2016. Ferrer purchased this model because she wanted a fast computer. In particular, she uses it for intensive video editing. She was unaware of the vulnerabilities described in this Complaint. Had Intel disclosed the existence and extent of the vulnerabilities, or the decreased performance caused by patching them, Ferrer would not have purchased a computer with this chip or would not have paid as much for it.

7.     Ferrer's laptop received the patch via a Windows update in January 2018. Since then, her computer has seemed slower to her.

**B.     Defendant**

8.     Defendant Intel Corporation is a business incorporated under the laws of the State of Delaware. Intel's principal place of business is located at 2200 Mission College Blvd., Santa Clara, California. At all relevant times, Defendant was engaged in the business of designing, manufacturing, distributing and/or selling electronic computer products, including in particular microprocessors for computers and servers.

9.     In addition to having its corporate headquarters in California, Intel employs approximately 13,000 California residents between its locations in Santa Clara and Folsom,

---

[4] O' Brien, *supra* note 2.

California. At its headquarters in Santa Clara, Intel engages in "engineering, design, research and development, and software engineering, and [the location] houses several corporate organizations, including sales and marketing, legal, supply network, and human resources."[5] Intel has additional locations in the state in San Diego and Irvine.

10.     Given Intel's extensive reliance on California's infrastructure, manpower, and resources to achieve its success in the marketplace, and given that the defects complained of herein emanated directly or indirectly from California, application of California law to Intel's conduct on a nationwide basis is appropriate.

11.     Whenever this complaint refers to any act of Defendant, the reference shall mean (1) the acts of the directors, officers, employees, affiliates, or agents of Defendant who authorized such acts while actively engaged in the management, direction or control of the affairs of Defendant, or at the direction of Defendant, and/or (2) any persons who are the parents or alter egos of Defendant, while acting within the scope of their agency, affiliation, or employment.

**JURISDICTION AND VENUE**

12.     Subject matter jurisdiction in this civil action is authorized pursuant to 28 U.S.C. § 1332(d) because there are more than one hundred Class members, a majority of Class members are citizens of states that are diverse from Intel, and the amount in controversy exceeds $5 million, exclusive of interest and costs.

13.     This Court has personal jurisdiction over Intel because Intel's principle place of business is in this District, Intel is registered to conduct business in California, and has sufficient minimum contacts with California.

14.     Venue is proper in this District under 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' and Class members' claims occurred in this district.

---

[5] Intel in California, https://www.intel.com/content/www/us/en/corporate-responsibility/intel-in-california.html.

**INTRADISTRICT ASSIGNMENT**

15.     Pursuant to Northern District of California Local Rule 3-2(c) and 3-2(e), assignment to the San Jose Division of this District is proper because a substantial part of the events or omissions giving rise to Plaintiff's and the proposed Class's claims originated from Intel's headquarters, located in one of the counties served by the San Jose Division.

**TOLLING**

16.     Plaintiff and the proposed Class did not discover, and could not have discovered through the exercise of reasonable diligence, the defective nature of their Intel CPUs until public reports of the exploits were made starting on January 2, 2018. Therefore, any otherwise-applicable statutes of limitations have been tolled by the discovery rule.

**FACTUAL ALLEGATIONS**

**A.     Computing basics lay the foundation for Meltdown and Spectre**

17.     A CPU, or central processing unit, is essentially the brains of a modern computer. CPUs perform the arithmetic and logical functions as instructed by various computer programs.

18.     CPUs can access the most sensitive information stored on any given computer when instructed, typically segregating information from one program from another, and segregating high-privilege (more sensitive) processes from low-privilege processes. This memory isolation is a basic security measure in modern processors.

19.     Most modern processors rely on out-of-order execution, sometimes called dynamic execution, to enhance their speed. Rather than performing processes in the exact order called for by a program, the CPU will prioritize processes based on the input data and execution units available, thus minimizing bottlenecks in processing.

20.     One key innovation in modern CPUs was the advent of speculative execution, sometimes considered a subset of dynamic execution. Speculative execution works to further minimize or avoid processing bottlenecks. The CPU can carry out what it "thinks" are functions the program may need in the future, storing the data (caching) so that, when called for, the work is already done. If the program does not end up needing that particular function, the process is unaffected. At any given time, a CPU may have worked out dozens of processes in advance, many or

all of which may not ultimately be used. In essence, the CPU skips ahead in the name of efficiency.

21.    Given their purpose, the two main aspects of CPUs that are marketed—and that CPUs are designed for—are speed and security.

22.    The problem arises at the intersection of the two: the CPU is jumping ahead on multiple processes while it's also supposed to keep information from discrete processes separate. The Meltdown exploit is so named because it effectively allows an attacker to "melt" the isolation between applications and the computer's operating system. Meltdown affects all Intel processors made since 1995 (with the exception of Itanium and Atom models made before 2013).[6] When Meltdown is deployed, an attacker can access arbitrary system memory that would otherwise be protected.

23.    Meltdown is incredibly powerful, particularly in light of how relatively simple it is to deploy. It exploits an inherent weakness in out-of-order execution; namely, that the CPU is accessing and performing computations on privileged memory, often for multiple processes that have different levels of permissions. Using Meltdown, "an attacker can dump the entire kernel memory by reading privileged memory in an out-of-order execution stream, and transmit the data from this elusive state . . . to the outside world."[7]

24.    Spectre, on the other hand, is more insidious. It is slower and more difficult to use to obtain information, but it is also far harder to fix. Spectre exploits weaknesses in speculative execution, where the CPU is plowing ahead in processes without knowing whether those calculations and resulting data will ever be used. "Spectre attacks trick the processor into speculatively executing instructions sequences that should not have executed during correct program execution."[8]

25.    Due to the nature of the Spectre exploit, no patch currently exists to fix all

_____

[6] This collection of processors is referred to as the "Intel CPUs" throughout the remainder of this Complaint.
[7] Moritz Lipp et al., "Meltdown" (submitted Jan. 3, 2018), available at: https://meltdownattack.com/meltdown.
[8] Paul Kocher et al., "Spectre Attacks: Exploiting Speculative Execution" (submitted Jan. 3, 2018), available at: https://spectreattack.com/spectre.

vulnerabilities. Instead, patches are being developed as particular deployments of Spectre are identified:

> We're likely looking at a world where there are pre- and post-Spectre processors. The lead time for new processors is measured in years, so there aren't going to be quick fixes. There will be continuous software patches as new Spectre vulnerabilities are found in the meantime.[9]

**B.      Intel learns of Spectre and Meltdown but does not alert consumers until after publicly reported by the media**

26.     Spectre and Meltdown may plague more than two decades worth of Intel CPUs, but that didn't cause Intel to sound the alarm when it first learned of either of them. Google has confirmed that it first alerted Intel of Spectre on June 1, 2017 and of Meltdown before July 28, 2017.

27.     In the ensuing months, several other researchers and groups of researchers separately discovered one or both vulnerabilities, and also alerted Intel. In fact, after submitting their research to Intel, one such group was surprised to hear back from it that two other research teams had beaten them to the discovery of Meltdown.[10]

28.     Interestingly enough, that group of researchers from the Graz University of Technology (the "Graz team") clued into the fact that something might be up because developers at major companies, including Intel and Google, suddenly had interest in the KAISER defensive redesign of operating systems that the Graz team had previously developed.[11] KAISER was designed to increase security by hiding the location of a computer's memory from malicious programs.

29.     During this time, CEO Brian Krzanich unloaded approximately $39M worth of Intel stocks and options.[12]

---

[9] Jake Swearingen, "Nearly Every Computer Made Since 1995 Is Dangerously Flawed. Here's What You Need to Know," New York Magazine (Jan. 4, 2018, 2:20p) http://nymag.com/selectall/2018/01/intel-chip-security-flaw-meltdown-spectre-what-to-know-explainer.html.
[10] Andy Greenberg, "Triple Meltdown: How so many researchers found a 20-year-old chip flaw at the same time," WIRED (Jan. 7, 2018, 2:23p), https://www.wired.com/story/meltdown-spectre-bug-collision-intel-chip-flaw-discovery/.
[11] *Id.*
[12] O'Brien, *supra* note 2.

30.     On January 2, 2018, following months of silence from Intel, The Register broke the news about both exploits.[13]

31.     Intel finally acknowledged the news reports on January 3, 2018 in a dismissive press release:

> Intel and other technology companies have been made aware of new security research describing software analysis methods that, when used for malicious purposes, have the potential to improperly gather sensitive data from computing devices that are operating as designed. Intel believes these exploits do not have the potential to corrupt, modify or delete data.
>
> Recent reports that these exploits are caused by a "bug" or a "flaw" and are unique to Intel products are incorrect. Based on the analysis to date, many types of computing devices — with many different vendors' processors and operating systems — are susceptible to these exploits.
>
> Intel is committed to product and customer security and is working closely with many other technology companies, including AMD, ARM Holdings and several operating system vendors, to develop an industry- wide approach to resolve this issue promptly and constructively. Intel has begun providing software and firmware updates to mitigate these exploits. Contrary to some reports, any performance impacts are workload-dependent, and, for the average computer user, should not be significant and will be mitigated over time.
>
> Intel is committed to the industry best practice of responsible disclosure of potential security issues, which is why Intel and other vendors **had planned to disclose this issue next week** when more software and firmware updates will be available. However, Intel is making this statement today because of the current inaccurate media reports.
>
> Check with your operating system vendor or system manufacturer and apply any available updates as soon as they are available. Following good security practices that protect against malware in general will also help protect against possible exploitation until updates can be applied.
>
> Intel believes its products are the most secure in the world and that, with the support of its partners, the current solutions to this issue provide the best possible security for its customers.[14]

---

[13] John Leyden & Chris Williams, "Kernel-memory-leaking Intel processor design flaw forces Linux, Windows redesign," The Register (Jan. 2, 2018 7:29p), https://newsroom.intel.com/news/intel-responds-to-security-research-findings/.

[14] Press release, "Intel Responds to Security Research Findings" (Jan. 3, 2018), available at: https://newsroom.intel.com/news/intel-responds-to-security-research-findings/ (emphasis added).

**C.    The Fallout**

32.    While Intel would like to minimize the scope and severity of Meltdown and Spectre, consumers and businesses are already feeling the impact. Intel reported that, as of January 17, 2018, it had deployed firmware updates for 90% of Intel processors made in the past five years, still leaving many Intel CPUs vulnerable.[15]

33.    KAISER, the defensive upgrade designed by the Graz team, has the unintended side effect of patching the Meltdown vulnerability—but at a price. Some reports indicate performance slowdowns of 30% or more post-patching.[16]

34.    Worse still, applying the patch to certain systems seems to render them all but useless, as, post-patch, they become prone to frequent reboots.[17]

35.    Spectre will not be as clean of a fix as Meltdown, with some researchers already speculating that the only true fix is to cycle out the old hardware in favor of new CPUs that are not vulnerable to Spectre. Currently, Intel and other computer companies will be releasing patches as they become aware of new uses of the Spectre exploit—providing scant comfort to the hundreds of millions of consumers and businesses whose sensitive information could be taken.

**CLASS ACTION ALLEGATIONS**

36.    Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(a), (b)(2), (b)(3), or (c)(4) individually and on behalf of the members of the following proposed classes:

> **The Nationwide Class**
>
> All persons residing in the United States who purchased one or more products containing Intel CPUs from Intel and/or its authorized sellers from 1995 to the present.
>
> **The California Class**
>
> All persons residing in California who purchased one or more products

---

[15] Navin Shenoy, "Firmware updates and initial performance data for data center systems," Intel Newsroom (Jan. 17, 2018), https://newsroom.intel.com/news/firmware-updates-and-initial-performance-data-for-data-center-systems/.

[16] Chafkin & King, *supra* note 1.

[17] Malcolm Owen, "Intel admits reboot issues in Spectre patch affects newer Skylake and Kaby Lake processors," Apple Insider (Jan. 18, 2018 11:29a EST), http://appleinsider.com/articles/18/01/18/intel-admits-reboot-issues-in-spectre-patch-affects-newer-skylake-and-kaby-lake-processors.

containing Intel CPUs from Intel and/or its authorized sellers from 1995 to the present.

37.    Except where otherwise noted, the "Class" and "Class members" shall refer to members of the Nationwide Class and the California Class collectively. Claims brought on behalf of the Nationwide Class are, in the alternative, brought on behalf of the California Class.

38.    Excluded from the Class are Intel, its subsidiaries, affiliates, officers, directors, and employees; persons who have settled with and validly released Intel from separate, non-class legal actions against Intel based on the conduct alleged herein; counsel, and the immediate families of counsel, who represent Plaintiff in this action; the judge presiding over this action; and jurors who are impaneled to render a verdict on the claims alleged in this action.

39.    Plaintiffs reserve the right to amend or modify the Class definition in connection with a motion for class certification and/or the result of discovery.

40.    **Numerosity**. Plaintiff is informed and believes that the proposed Class comprises of millions of members. Therefore, the Class is so numerous that joinder of the individual members of the proposed Class is impracticable. The precise number and identities of Class members are unknown to Plaintiffs, but are known to Intel or can be ascertained through discovery, using records of sales, warranty records, and other information kept by Intel or its agents. Plaintiffs do not anticipate any difficulties in the management of this action as a class action. Notice can be provided through sales and warranty records and publication.

41.    **Commonality**. Questions of law or fact common to the Class exist as to Plaintiffs and all Class members. Intel has acted with respect to Plaintiff and members of the proposed Class in a manner generally applicable to each of them. There is a well-defined community of interest in the questions of law and/or fact alleged herein since the rights of each Class member were infringed or violated in similar fashion based upon Intel's uniform misconduct.

42.    **Typicality**. Plaintiff suffered a similar injury as Class members as a result of Intel's uniform misconduct and Plaintiff's claims are typical of the Class.

43.    **Adequacy**. Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has retained experienced class counsel who will vigorously prosecute this action on behalf of the Class.

44.     **Predominance**. The common questions of law and fact alleged herein predominate over any questions affecting only individual members of the Class. Among these predominant common questions of law and/or fact are the following:

a.      Whether Intel designed and manufactured its CPUs with critical security defects;

b.      When Intel knew or should have known about the existence of those defects;

c.      Whether Intel unreasonably delayed notifying the public and attempting to fix those defects;

d.      Whether attempts to patch those critical security defects in Intel CPUs has caused or will cause their performance to degrade;

e.      Whether Intel breached any implied warranties related to the sale of its CPUs;

f.      Whether Intel breached any express warranties related to the sale of its CPUs;

g.      Whether Intel violated the consumer protection laws detailed herein; and

h.      Whether Intel omitted material facts about the security and performance of its CPUs.

45.     **Superiority**. A class action is superior to other available methods for the fair and efficient group-wide adjudication of this controversy, and individual joinder of all Class members is impracticable, if not impossible because a large number of Class members are located throughout the United States. Moreover, the cost to the court system of such individualized litigation would be substantial. Individualized litigation would likewise present the potential for inconsistent or contradictory judgments and would result in significant delay and expense to all parties and multiple courts hearing virtually identical lawsuits. By contrast, the conduct of this action as a class action presents fewer management difficulties, conserves the resources of the parties and the courts, protects the rights of each Class member and maximizes recovery to them.

46.     Intel has acted on grounds generally applicable to the entire Class, thereby making final injunctive relief or corresponding declaratory relief appropriate with respect to the Class as a whole.

**CLAIMS ON BEHALF OF THE NATIONWIDE CLASS**

**FIRST CAUSE OF ACTION**

**Violation of California's Unfair Competition Law**

**Cal. Bus. & Prof. Code § 17200 *et seq*.**

47.     Plaintiff realleges and incorporates by reference each of the paragraphs set forth above as though fully set forth herein.

48.     Plaintiff and members of the general public bring this claim pursuant to the "unlawful" prong of Business & Professions Code § 17200 *et seq*. ("UCL"), which provides that "unfair competition shall mean and include any unlawful, unfair or deceptive business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter I (commencing with Section 17500) as Part 3 of Division 7 of the Business and Professions Code."

49.     Intel has violated and continues to violate section 17200's prohibition against engaging in "unlawful" business acts or practices, by, among other things:

- Violating the CLRA, California Civil Code § 1750, *et seq*.;
- Violating federal laws, including the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq*.; and
- Violating the Song-Beverly Warranty Act, California Civil Code § 1792, *et seq*.

50.     Intel also acted fraudulently and unfairly for purposes of section 17200. Intel's omissions regarding its CPUs security and speed, specifically relating to the Meltdown and Spectre vulnerabilities, were a material factor in inducing Plaintiff and the Class to purchase Intel CPUs or devices containing Intel CPUs.

51.     Had the omitted information been disclosed by Intel, Plaintiff and members of the Class would have been aware of it and would have behaved differently.

52.     As a result of Intel's unlawful business acts and practices, Plaintiff and the Class suffered injury in fact and lost money and/or property. Each Class member suffered harm when each was required to pay a purchase price for their Intel CPUs or devices containing Intel CPUs which they never would have purchased if the true facts were known; or paid a price in excess of what a

1    Class member would have paid if Intel had accurately disclosed the characteristics of its CPUs; and

2    in the form of decreased resale value of the Intel CPUs/devices containing Intel CPUs.

3        53.    Plaintiff and the Class are entitled to full restitution and disgorgement of the profits

4    from Intel's unlawful business practices. Plaintiff and Class are entitled to such relief in the form of

5    full restitution for the inflated sale price of the Intel CPUs/devices containing Intel CPUs.

6        54.    Plaintiff is also entitled to equitable relief as a result of Intel's violations of the

7    Business & Professions Code section 17200, *et seq.* Plaintiff and the Class also seek an order

8    enjoining Intel from its unlawful business practices and from continuing such conduct in the future.

9                        **SECOND CAUSE OF ACTION**

10                  **Violation of the Magnuson-Moss Warranty Act**

11                        **15 U.S.C. § 2301 *et seq*.**

12        55.    Plaintiff realleges and incorporates by reference each of the paragraphs set forth

13    above as though fully set forth herein.

14        56.    This claim is brought by Plaintiff and the Class under the Magnuson-Moss Warranty

15    Act, 15 U.S.C. § 2301 *et seq*.

16        57.    Intel CPUs are consumer products as defined in 15 U.S.C. § 2301(1).

17        58.    Intel is a supplier and warrantor as defined in 15 U.S.C. § 2301(4)-(5).

18        59.    Written warranties as defined in 15 U.S.C. §2301(6)(A) and/or (B), which Intel has

19    breached were received by Plaintiff and the Class.

20        60.    Plaintiff and the Class are "consumers" as defined in 15 U.S.C. § 2301(3). Because

21    they bought Intel CPUs and/or devices containing Intel CPUs, they are consumers, and they are

22    entitled to enforce both written and implied warranties under California law.

23        61.    Under 15 U.S.C. § 2310(e), Plaintiff and the Class are not required to provide Intel

24    notice of this class action and an opportunity to cure until the time the Court determines the

25    representative capacity of Plaintiff pursuant to Fed. R. Civ. P. 23.

26        62.    Intel breached its written warranties, and is therefore liable to Plaintiff and the Class

27    under 15 U.S.C. § 2310(d)(1).

28

63.     As part of the sale transactions relating to the Intel CPUs, Intel gave an implied warranty under the Act. As part of that implied warranty, Intel warranted that the Intel CPUs were designed and built to certain performance and security standards. The implied warranty of merchantability was breached by Intel.

64.     As a result of Intel's breaches of the warranties to Plaintiff, Plaintiff and the Class are entitled to damages. These damages include economic damages including either a return of Plaintiff and Class members' purchase price; and/or the difference between the price paid for the product(s) containing an Intel CPU as warranted and the actual value of the product as delivered, and consequential damages.

65.     Further, Plaintiff and the Class are entitled to reasonable attorneys' fees and costs as determined by the Court.

### THIRD CAUSE OF ACTION

### Breach of Express Warranty

66.     Plaintiff realleges and incorporates by reference each of the paragraphs set forth above as though fully set forth herein.

67.     Intel expressly warranted to persons purchasing its CPUs that they were what they were represented to be.

68.     Plaintiff and members of the Class, in particular, were induced by these express warranties to use and purchase Intel's products. Plaintiff and the Class directly and indirectly believed and relied upon Intel's express warranties, and they induced Plaintiff and the Class to select Intel CPUs (or devices containing Intel CPUs).

69.     The above referenced warranties were breached by Intel as its products were not fit for the use and purpose expressly warranted by Intel.

70.     Plaintiff and the Class have suffered injury in fact and have suffered an economic loss by, *inter alia*: (a) purchasing a product they never would have purchased; (b) purchasing an inferior product whose nature and characteristics render it a lesser value than represented; (c) incurring costs for diminished resale value of the products purchased; and (d) incurring increased costs to repair the products purchased.

## FOURTH CAUSE OF ACTION

### Breach of Implied Warranty

71.    Plaintiff realleges and incorporates by reference each of the paragraphs set forth above as though fully set forth herein.

72.    Intel impliedly warranted to persons purchasing its CPUs that these CPUs were what they were represented to be.

73.    Intel's implied warranties induced Plaintiff and other Class members to purchase Intel CPUs or devices containing Intel CPUs. Plaintiff and Class members both directly and indirectly believed and relied upon by these implied warranties. And said implied warranties induced them to choose Intel CPUs. Plaintiff and the Class's reliance was justified, and was based on Intel's skill, expertise, and judgment in the design, manufacturing, testing, labeling, distribution, or sale of such products.

74.    Intel had knowledge of the purpose for which its CPUs were purchased at the time of sale, and at the time of sale also impliedly warranted the same to be, in all respects, fit and proper for this purpose.

75.    Said warranties were breached by Intel, in that its CPUs were not fit for the purpose for which they were intended and used; rather Plaintiff and the Class were sold CPUs that were not fit for use as represented. The defect in the CPUs existed prior to the delivery of the products to Plaintiff and the Class.

76.    Plaintiff and the Class have suffered injury in fact and have suffered an economic loss by, *inter alia*: (a) purchasing a product they never would have purchased; (b) purchasing an inferior product whose nature and characteristics render it of a lesser value than represented; (c) incurring costs for diminished resale value of the products purchased; and (d) incurring increased costs to repair the products purchased.

**CLAIMS ON BEHALF OF THE CALIFORNIA CLASS**

**FIFTH CAUSE OF ACTION**

**Violations of the Song-Beverly Warranty Act**

**Cal. Civ. Code § 1792, *et seq.***

77.     Plaintiff realleges and incorporates by reference each of the paragraphs set forth above as though fully set forth herein.

78.     Every sale of consumer goods in the State of California comes with a manufacturer's and retail seller's implied warranty that the goods are merchantable and an implied warranty of fitness.

79.     The Intel CPUs described herein purchased by Plaintiff and Class members are "consumer goods" within the meaning of Cal. Civ. Code § 1791.

80.     Intel is a "manufacturer" and "seller" within the meaning of Cal. Civ. Code § 1971.

81.     Intel impliedly warranted to Plaintiff and Class members that its CPUs were merchantable and fit for the ordinary and particular purposes for which they are required and used.

82.     Intel breached those implied warranties because the CPUs sold to Plaintiffs and Class members were not merchantable nor fit for the ordinary and particular purposes for which such goods are used because Intel's CPUs contain critical security defects that, when patched, cause performance decreases.

83.     As a direct and proximate result of Intel's conduct, Plaintiff and Class members sustained losses in an amount to be determined at trial, potentially including compensatory damages, consequential damages, statutory damages and/or civil penalties, diminution in value, costs, attorneys' fees, and interest.

**SIXTH CAUSE OF ACTION**

**Violations of the Consumer Legal Remedies Act**

**Cal. Civ. Code § 1750 *et seq.***

84.     Plaintiff realleges and incorporates by reference each of the paragraphs set forth above as though fully set forth herein.

85.     This claim for relief is brought pursuant to the CLRA. Plaintiff and members of the

1    California Subclass are "consumers," as that term is defined by California Civil Code section

2    1761(d) because they bought Intel CPUs or devices containing Intel CPUs for personal, family, or

3    household purposes.

4         86.    Plaintiff and members of the California Subclass have engaged in a "transaction" with

5    Intel, as that term is defined by California Civil Code section 1761(e), because they have entered

6    into a purchase agreement with Intel to purchase an Intel CPU.

7         87.    The conduct alleged in this Complaint constitutes unfair methods of competition and

8    unfair and deceptive acts and practices for the purposes of the CLRA, and were undertaken by Intel

9    in transactions intended to result in, and which resulted in, the sale of goods to consumers; namely,

10   the sale of Intel CPUs and devices containing Intel CPUs.

11        88.    By engaging in the conduct alleged herein, Intel has violated subdivisions (a)(5),

12   (a)(7), and (a)(9) of California Civil Code section 1770 by, misrepresenting and concealing the true

13   nature and scope of the Meltdown and Spectre vulnerabilities, and the fact that the subsequent

14   patches would decrease the performance of Intel CPUs. Intel's omission of these material facts

15   caused Plaintiffs to purchase Intel CPUs (or devices containing Intel CPUs) they would not have or

16   to pay more for Intel CPUs/devices with Intel CPUs than they would have but for Intel's

17   misconduct.

18        89.    By concealing the battery defect and the iOS modification from Plaintiff and

19   members of the proposed class, Intel has represented, and continues to represent, that its CPUs have

20   characteristics, uses and benefits, or qualities that they do not have, and that they are of a particular

21   standard, quality, or grade, when they are not, in violation of Civil Code section 1770, subsections

22   (a)(5) and (a)(7).

23        90.    By engaging in the conduct alleged herein, above, Intel has also advertised, and

24   continues to advertise, goods with the intent not to sell them as advertised, in violation of California

25   Civil Code section 1770(a)(9).

26        91.    Pursuant to Section 1782 of the CLRA and along with the filing of this Complaint,

27   Plaintiff will send written notice to Intel by certified mail regarding its violations of the CLRA,

28   thereby providing Intel with an opportunity to correct or otherwise rectify the problems alleged

herein within 30 days of receipt of that notice.

92.    An affidavit showing this action is properly venued as required by Civil Code section 1780(c) is filed concurrent with this Complaint.

93.    Unless Intel agrees to correct, repair, replace, or otherwise rectify the problems created by Intel's conduct as alleged herein, Plaintiff will amend this Complaint to seek an order awarding actual damages.

94.    Plaintiff now seeks an order requiring Intel to (a) cease violating the CLRA; and (b) to provide owners of Intel CPUs with notice that the slow performance of those devices is caused by patching decades-old security vulnerabilities.

## SEVENTH CAUSE OF ACTION

### Unjust Enrichment / Quasi Contract

95.    Plaintiff realleges and incorporates by reference each of the paragraphs set forth above as though fully set forth herein.

96.    As a direct, proximate, and foreseeable result of Intel's acts and otherwise wrongful conduct, Plaintiff and Class members suffered damages. Intel profited and benefitted from the unjust sale of its CPUs, which caused Plaintiff and Class members to incur losses and damages.

97.    Intel has voluntarily accepted and retained these profits and benefits, derived from their customers, including Plaintiff and Class members, with full knowledge and awareness that retention of such profits and benefits is wrong and unlawful.

98.    By virtue of the conscious wrongdoing alleged in this Complaint, Intel has been unjustly enriched at the expense of Plaintiff and Class members, who are entitled to, and hereby seek, the disgorgement and restitution of Intel's wrongful profits, revenue, and benefits, to the extent and in the amount, deemed appropriate by the Court, and such other relief as the Court deems just and proper to remedy Intel's unjust enrichment.

99.    Unless successful on the preceding counts of this Complaint, Plaintiff and the Class have no adequate remedy at law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on her own behalf and on behalf of the Class, respectfully requests that this Court enter an Order:

A.    Certifying the proposed Nationwide Class and California Class, and appointing Plaintiff as Class Representative;

B.    Awarding Plaintiff and Class members actual, compensatory, and consequential damages;

C.    Awarding Plaintiff and Class members statutory damages and penalties, as allowed by law;

D.    Awarding Plaintiff and Class members restitution and disgorgement;

E.    Awarding Plaintiff and Class members pre-judgment and post-judgment interest;

F.    Awarding Plaintiff and Class members reasonable attorneys' fees, costs, and expenses; and

G.    Granting such other relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff, individually and on behalf of all others similarly situated, demands a trial by jury on all issues so triable.


Dated: February 6, 2018          CASEY GERRY SCHENK
                                 FRANCAVILLA BLATT & PENFIELD, LLP


                                 By:    /s/Gayle M. Blatt
                                        GAYLE M. BLATT
                                        *gmb@cglaw.com*
                                        Attorneys for Plaintiff